whenever you're settled, you're free to begin. Thank you, Your Honor. Jeff Dickerson appearing on behalf of the appellant, Pauline Mills, in this case, out of Reno, Nevada. This is a civil rights case. We have three Federal claims at issue. The question is whether the statute of limitations bars any of those claims. The district court found that the claims were barred, finding that the decision-making process that took place in September of 2002 was the accrual period. The actions at that point in time started the clock running, according to the district court, with respect to all three claims for relief, and that anything that happened after that was just a sequelae, if you will, to the initial decision. What happened in 2002 in September? In September of 2002, Dr. — there was a — well, from the beginning, there was a — according to the allegations in the complaint, accepted as true here for the purposes of appeal, somebody reported that she indicated to somebody that she had a drinking problem. So — So your client told apparently somebody named Anderson that she had a substance abuse problem? Correct, Your Honor. And Anderson then reported that to the medical school? She's part of the medical school, and that ran up the chain of command and ended up in this hearing. All right. And so — She's a student at the medical school, right? That's correct, Your Honor. Your client? Yes. And so when that came to the attention of the school, what happened in September of 2002? They had a hearing with respect to the recommendation of Dr. Broadhead, who was — who saw her for about an hour, according to the allegations in the complaint. And based upon that hour examination, he's a psychiatrist, recommended that she go into a 90-day rehab program. And there was a hearing before the counsel about that, and they agreed with his recommendation. And so at that point in time, she booked herself into the next available slot, which was, I believe, October or November, December, January, into 2003. And then she returned February 1 of 2003. At this point in time, she receives a second letter. After the hearing on the first one, the dean notified her that she had to go to this rehab program pursuant to the findings of the committee. On February 1 of 2003, she receives a second letter on her return for the first time telling her that she's also on probation for another year. And she — Was there ever a precise point in time that you can point to where there was a finding that she had no propensity to alcohol that would affect her professional career? Well, for purposes of appeal, and this is discrete issues before the Court, I'm not sure that's at issue. But we do take issue with that. And we have alleged that the due process that was provided was corrupt and a sham because at the committee back in September of 2003, because the sole basis upon which Dr. Broadhead made his findings was a one-hour visit with her, he concluded that she had an addiction to alcohol that needed rehabilitation. Well, she was suspended starting in September 2002. Until she returned from the rehab. Yeah. And that — what's the statute of limitations? How long do you have to file your claim? For the federal claims, two years. Two years. So why doesn't the clock start running in September 2002, which seems to be the suspended at that point? Well, that's what the district court found. Yeah, well, what's the problem with that? Well, the problem with that is — That's when she was suspended. I mean, how couldn't she know at that time, if she believed this, that she had a civil rights case? Well, we have two essential arguments there. If that is when the clock starts running, there's a tolling because of Broadhead's conduct in telling her that if she resists this program, that she's going to be out of the school. And then that continues through. But normally — normally tolling occurs when someone is led to believe that they don't have to file a claim for some reason, where the nature of the problem is hidden from them. But she knew about the suspension. She knew the reasons for it. And she knew what kind of hearing she had received, whether good or bad. So there's no concealment of the events that would give rise to her claim. So I'm not sure I understand the basis for your tolling argument. Well, the case we cited in our briefs, Your Honor, is a case where there were — there was an application by the defendants of threats to the person. That was a principal who was stalking this person. And she didn't report earlier. And the question was why. And the answer was because he threatened her. And she — whether or not there was a reasonable perception of a threat was a question of fact, I think, in that case. But at least the Court in that case recognized that the imposition of a threatening environment, duress, if you will, could be the reason. But that seems to be part of her claim rather than something that would have prevented her from making a claim. Both. It is. Very good, Your Honor. That's a — this is where the First Amendment claim intersects with the due process claim in terms of the statute of limitations, because the essence of the First Amendment adverse action is that Brodhead continued to prevent her from speaking out about what she felt was impropriety and prevented her from exercising her rights with respect to the hearing that had occurred back in September of 2002. Because of this duress that's implicated in the First Amendment claim, there's tolling for the due process argument. That's our argument, Your Honor. It's based upon the threats from Brodhead saying — because when she got back, she had to see him periodically, but she had to begin seeing him before she left also. And there was contact there, according to the allegations of the complaint, where he threatened her. Did the district court address your tolling argument? No. Did not. Where did you make it before the district court? I believe we made it below, Your Honor, but the record will speak for itself. If we didn't make that argument below, obviously, I can't make it here. Right. You can't point to where you made it below? Not right now. But the — going back to the main claim, though, the question presented to this Court is an important one if you look at it from the standpoint of when does a due process claim accrue. When you're claiming that the process provided was corrupt and that you don't know that it includes putting you on probationary status until February 1 of 2003. And if the test is for accrual under Federal case law, when you know or should know that you have all the claims, all the elements of your cause of action, that February 1, 2003 would be the accrual date with respect to the probation. All right. Can I ask you this? Yes. Go ahead. She's a student, right? Yes. Is there a student handbook that lays out the rules and regulations for professional training and status and conduct along the line to a degree of medicine, a medical doctor? Yeah. It's pretty extensive. Yes. All right. Can you point to anything that the school did in violation of the rules that were laid down in the manual that was given to the student at the beginning of the courses? Well, your question again, Your Honor, is going to the merits of the case and not to the issue. The trouble is that if you have a student manual of some kind, there must also be some rule and regulation with respect to the procedure for effecting dismissal or probation or the medications that were or the medical treatment that was prescribed in this case. Is this all coming out of the blue? Well, I would say. Did she consent to it? No. She consented because she felt she had to because of the. Well, she was a student. And as a condition of being a student, you comply with the rules, right? Right. It's not like the employment where you hire on and you're paid a salary and you're in an employer-employee relationship. That's not what exists here. Well. This is a student mentor program. She pays a tuition to go there, right? Well, the question under the case law is, I think, one of discovery, first of all, and second of all, in a due process case, I think you can differentiate from the Ricks case. The Supreme Court decided determining when the discriminatory act occurs is when it happens, and that's when the claim accrues for purposes of that. With a due process claim, it's a process that's at issue. It's a denial of process or a provision of process that, in our case, we allege is a sham. That's the denial of due process. What was a sham? What do you say was a sham? That Broadhead and the others put this thing together to get her out into the rehab program. Why would they want to get her into a rehab program? I mean, they had nothing better to do than put medical students in rehab programs. I mean, it seems to me that a medical school would be very worried about a doctor, a potential doctor with a substance abuse program. So how is it a sham if she tells somebody she's got a problem and they convene a hearing to do something about it? Well, that's a question of fact based upon the allegations of the complaint here. I think if you accept them as true, that the issue you're presenting isn't before the Court. But how is it a sham? I mean, you just told us it's a sham. Because Broadhead gave a false opinion of his findings based upon a one-hour interview with her, found that she was an alcohol addict and she needed 90 days of rehab. So it's a misdiagnosis? Is that what it is? No, it's not a misdiagnosis. We allege it's an intentional falsehood. An intentional falsehood? Is she practicing medicine today? Yes, she is. On the face of it, it seems that the school saved her from herself. And I know that's merits, but, I mean, you're – what you're complaining about is that this – it's accentuating how bad the 2002 hearing was. The reason I'm asking these questions is because that should have clearly triggered this. If she's sitting there in 2002 realizing that this guy is lying about her and making all this up and she's not – doesn't have a substance abuse process, that's all the more reason why the clock starts running in September. Well, the argument with respect to probation is that's not discovered until February 1st of 2003. The argument – continuing the argument I was making with respect to the – making her go to rehab, our claim on that isn't that they made her go to rehab. Our claim on that is that it took up three months, it ate that semester up, and it delayed her progress in her career to medicine. Thank you, counsel. You've exceeded your time. I realize that, Your Honor. We'll hear from – no problem. We were asking questions, so we'll hear now from Mr. Ray. Thank you, Honorable Members of the Court. My name is Tom Ray. I'm general counsel for the School of Medicine here on behalf of the appellees, and I thank you for the opportunity to address this court. I have to begin by saying that counsel's recitation of the record is inaccurate. The case is pretty straightforward and it is simple. Counsel, let me – let me direct your attention to some issues that are of concern to me. I understand your position that with respect to the bulk of the claims, the clock started running in September of 2002. But the complaint also contains statements of specific events that are not flowing directly out of that that occurred significantly after February 1st of 2003. For example, there's an allegedly defamatory letter that goes out in November, I think, of 2004. There's a claim that the handbook requirement was not met in a certain respect until two days before graduation. In terms of timeliness, why aren't those discrete events sufficient to support a piece of her claim? Thank you, Your Honor. All of the actions occurred after the Student Development Committee is a committee charged at the School of Medicine with overseeing the development and progress of medical students. After Dr. Brodhead evaluated this medical student, the committee met in September 26, 2002. She had the full opportunity to address her concerns and to address the committee. The committee recommended in the dean of the School of Medicine, and as provided in the student handbook, the decision of the dean is final. The dean, in his letter in September 26, 2002, and contrary to what counsel said, that a second letter was issued February 1, 2003, where she was placed on probation, that is absolutely false. If you take a look at the record. Counsel, you're not responding to my specific question yet. I'm trying to get there, Your Honor. Okay. I'm sorry. The letters were written by the dean on December 26, 2002. That's page 118. And the second letter was written on September 27, 2002. That is at 119. And the dean specifically said, effective immediately, you are hereby suspended from the School of Medicine and placed on medical leave. Upon successful completion of that rehabilitation, you may return to the school on probation. She was placed on probation on September 27, 2002. Now, she was also required to be monitored during her return to school up until the time she graduated. So everything that happened after she returned in 2003 were all part of that original decision. You will be on probation. You will be monitored by the committee. Dr. Broadhead, the allegation is, is Dr. Broadhead made threats, and that is a new discrete act. Well, that was not a new discrete act. That flowed from the original probation, the requirement of monitoring. And what were the threats? The allegation is, the complaint is, is that the medical student protested his diagnosis and did not believe that she should be in the program. Counsel, the allegation that I'm concerned about, among others, is that Broadhead made false and defamatory statements over concerning plaintiffs to the SDC and possibly  included a November 2004 letter directed to the SDC. That's a the kind of allegation that I'm referring to, where there are specific acts that are not related to the original hearing and so forth that are. As to his, the allegation, again, as to his representations or opinions to the committee, that occurred in 2002. This November 2004 letter, I don't even know what that is. But, Counsel, my problem is that we're dealing here with pleadings and timeliness only. We don't know whether there was a letter in 2004 or not. We're looking at pleadings, and my question is, why isn't the allegation that something new happened in 2004 enough to survive the timeliness aspect of this? It may be that she can't prove her case, but that's not what we're asking. We're beyond pleadings. Because in my motion, Your Honor, pursuant to 12b-6, I attach partial outside of the pleadings to my motion. The rule expressly provides that if matters outside of the pleadings are referred to, the other party must come forward with something to rebut that evidence. I put clear evidence in the record that the statute of limitations began to run in September 2002. There was nothing printed in opposition to that motion to indicate that there was something that happened in 2004. He cannot rely on the pleadings at that point once matters outside the record are referred to. There was nothing in that record about a letter in November of 2004. And that is what troubles me about this equitable tolling case, Your Honors. Counsel, the district court's order does not refer to this or consider this as a motion for summary judgment. It considers it as a motion to dismiss and considers that all well-pleaded allegations of material fact are being taken as true and construed in the light most favorable to the plaintiffs. So the district court, at least, was looking strictly at the pleadings in response to your motion to dismiss on the pleadings and was looking at timeliness in that regard. So I'm not sure why we should be looking at this as other than a motion to dismiss now. The district court did refer to matters outside the pleadings. Again, at the record, at page 137 of the record in the court's decision, the court says Mills argued, although she was notified of her medical leave on September 26th, 2002, her promotion began on February 1st. And then on the next page. That's her argument. That's a description of her argument. It says in the very next page. What page of the record are you referring to now? 137 and 138, Your Honor. On page 138, the court says, Plaintiff's reliance on hostry is misplaced. In September 2002, the final decision was made to put to Mills on medical leave. Concurrently with the decision, a letter was issued suspending Mills from school and placing her on probation. And that's in quotes. Counsel, none of that has anything to do with the question that I asked you. I understand that your position is that with respect to the placement on leave and the probation, that's all a package. But, okay, I guess we're not communicating well with each other. What I'm saying is, is the court did rely on matters outside the plea. The court relied on the dean's letters. At that point, he has to come forward with something in opposition to that. He never came forward with this alleged letter. Okay. Now, what says he has to come forward with something? Which rule are you referring to on a statute of limitations motion? Well, in effect, a motion to dismiss matters outside the pleas are referred to. The other party must come forward with something to show it's like a motion for summary judgment, must show issues of fact. He relied on the pleadings and showed nothing in opposition to the motion. And it's the same thing with his tolling argument. He couldn't point to anything in the record. He never made a tolling argument below. Never. He didn't make a tolling argument until his reply brief in this Court. And the one case he cited says, if you're going to – once the statute of limitations is raised, which was raised below, and you're going to make an argument as to why the statute should be tolled, you've got to put forward some evidence. He didn't put forward any evidence below. And not until his reply points and authorities before this Court does he make the argument of tolling. Well, that shouldn't even be considered by this Court. And that's the other thing that troubles me about his points and authorities that he submitted to this Court. He's taken a position in his reply brief here that is contrary to the position that he took in the lower court in opposition. In his points and authorities, he acknowledged that she received the Dean's letter in September of 2002. Now, in his reply brief, he alleges that, well, we have to rely on the pleadings, and he – and she alleges that she didn't receive it. He acknowledged it in his points and authorities in opposition. The district court quoted from that, that she acknowledged that she received the letter in 2002. This should not be considered by this Court. It is contrary to the record, and it is inconsistent with what the positions that he took below. He shouldn't be able to come forward now and say, oh, well, that didn't work. I'm going to try a new argument. I'm going to do it in reply when nobody can even respond to it. That's why this argument is so critical, Your Honors. He didn't raise these issues before. He chose to rely on his pleadings. There was evidence presented to the district court that showed that the statute commenced in September of 2002, and everything that happened after that all flowed from that original decision. The alleged harm – and I use the word harm loosely because the Court's noted this school saved her career. She had a substance abuse problem. They were very concerned about a future doctor who was alcohol dependent. They saved her career. Dr. Hug English, one of the appellees in this case, fought very hard and got her a match at a hospital after she graduated from the medical school. And this is the return after all you've done for me? Okay, well, now that you've done all you can do for me, now I'm going to sue you. The statute of limitations commenced in 2002. The statute ran, Your Honors. There was nothing that happened after that that told that statute. Thank you, counsel. The case just argued is submitted.
judges: Beezer, Trott, Graber